IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH RIDEAU and KIMBERLY RIDEAU, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-3937 |
| | § | |
| FEDERAL NATIONAL MORTGAGE | § | |
| ASSOCIATION and IMPAC MORTGAGE | § | |
| CORP. D/B/A CASHCALL MORTGAGE, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Joseph and Kimberly Rideau sued IMPAC Mortgage Corporation and the Federal National Mortgage Association ("Fannie Mae") in Harris County District Court, alleging violations of the Texas Constitution's provisions on home equity loans and seeking damages, quiet title, declaratory judgment, a permanent injunction, and attorney's fees. (Docket Entry No. 1-1). IMPAC and Fannie Mae timely removed, and the Rideaus amended their complaint. (Docket Entry Nos. 1, 18). IMPAC and Fannie Mae have moved for summary judgment, the Rideaus responded, and IMPAC and Fannie Mae replied. (Docket Entry Nos. 19, 21, 22).

Based on the motion, response, reply, the record evidence, and the applicable law, the court grants the summary judgment motion and enters final judgment by separate order. The reasons for this ruling are explained in detail below.

**I.   Background**

In 2016, Joseph and Kimberly Rideau refinanced their home with a home equity loan from IMPAC Mortgage Corporation. (Docket Entry No. 8 at ¶ 6; Docket Entry No. 20-1 at 7). Their Home Equity Security Agreement with IMPAC securing the loan stated that it was structured "to conform to the provisions of the Texas Constitution applicable to Extension of Credit as defined by

1

Section 50(a)(6), Article XVI of the Texas Constitution." (Docket Entry No. 20-1 at 8). In March 2018, the Rideaus sent IMPAC a letter stating that their home equity loan violated several provisions of the Texas Constitution. (Docket Entry No. 21-3). In September 2018, the Rideaus filed their original state-court petition against Fannie Mae and IMPAC, and the defendants timely removed to federal court. (*See* Docket Entry No. 1).

The Rideaus contend that Fannie Mae and IMPAC violated provisions of the Texas Constitution that regulate home equity loans within the State. The amended complaint alleges that: (1) the loan closed before 12 days after the original loan application was submitted to the lender or 12 days after the borrower received notice that Article XVI governed the loan, in violation of TEX. CONST. art. XVI, § 50(a)(6)(M)(i); (2) the loan did not close one business day after the date that the owner received a final itemized disclosure, in violation of TEX. CONST. art. XVI, § 50(a)(6)(M)(ii); (3) the loan did not close in the appropriate office, in violation of TEX. CONST. art. XVI, § 50(a)(6)(N); (4) Fannie Mae and IMPAC did not provide the Rideaus a copy of the final loan application and documents signed at the closing, in violation of TEX. CONST. art. XVI, § 50(a)(6)(Q)(v); and (5) the lender did not provide an acknowledgment of the fair market value of the property on the date that the extension of credit was made, in violation of TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix). (*See* Docket Entry No. 8 at ¶¶ 13(a)–(e)).

The Rideaus argue that these alleged violations breached the security agreement. (*Id.* at ¶¶ 14–16). The Rideaus allege that they suffered damages "in the amount of all payments made to [Fannie Mae and IMPAC] since the inception of the loan," because the breaches made the lien void. (*Id.* at ¶ 16). The Rideaus seek a quiet-title ruling, arguing that "[t]he Note and Deed of Trust upon which the Defendant asserts an interest, although facially valid, is in fact invalid and of no force or effect because Defendant's uncured constitutional violations have rendered Defendant's underlying lien void *ab initio*." (*Id.* at ¶ 20). They seek a declaratory judgment stating that their home equity

loan is void because Fannie Mae and IMPAC failed to cure the constitutional defects in the loan documents. (*Id.* at ¶¶ 21, 23, 25). The Rideaus seek an injunction against foreclosure and reasonable attorneys' fees under TEXAS CIVIL PRACTICE & REMEDIES CODE § 38.001, *et seq.* (*Id.* at ¶ 26).

## II. The Legal Standard

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the

3

motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *LHC Grp.*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

## III. Analysis

In Texas, "the homestead has always been protected from forced sale, not merely by statute as in most states, but by the Constitution." *Garofolo v. Ocwen Loan Servicing, LLC*, 497 S.W.3d 474, 477 (Tex. 2016) (quoting *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013)). Article XVI, § 50(a)(6) of the Texas Constitution lists requirements that home equity loans must meet in order for a lender to have a valid lien on a borrower's homestead property. *See* TEX. CONST. art. XVI, § 50(c); *see Garofolo*, 497 S.W.3d at 478 ("[Section 50(a)(6)] simply describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default."). A plaintiff must allege violations of § 50(a)(6) in conjunction with a cause of action to state a claim. *Garofolo*, 497 S.W.3d at 478.

4

Section 50(a)(6)(Q)(x) allows a lender that is in violation of the obligations of this section to cure its noncompliance. TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). To trigger the lender's obligation to cure, the borrower must notify the lender of its noncompliance. *Id.* The lender then has 60 days to cure. *Id.* If the lender does not, it "shall forfeit all principal and interest of the extension of credit." TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). This provision does not create a constitutional right to forfeiture, but the forfeiture can be enforced through a breach-of-contract claim. *Garofolo*, 497 S.W.3d at 482.

The Rideaus argue that they sent the defendants a Notice to Cure and that the defendants did not cure within 60 days. (Docket Entry No. 21 at 13–14; Docket Entry No. 21-3). IMPAC and Fannie Mae do not address the notice to cure provision in their motion or reply, instead arguing that they committed no underlying violations. (*See* Docket Entry Nos. 19, 22). The Rideaus' response addresses only their claim that IMPAC and Fannie Mae violated § 50(a)(6)(Q)(ix), which requires a home equity lender to acknowledge the fair market value of the property. (Docket Entry No. 21 at 4–10). The court examines each argument and response below.

### A. Section 50(a)(6)(M)(i)

Section 50(a)(6)(M)(i) states that a home equity loan cannot close until at least 12 days after the borrower submits the loan application or receives a § 50(g) notice, which details the home equity loan requirements under § 50(a), whichever is later. TEX. CONST. art. XVI, § 50(a)(6)(M)(i). Joseph Rideau signed and dated his loan application on August 25, 2016, and the Rideaus signed and dated the § 50(g) notice on October 2, 2016. (Docket Entry No. 20-1 at 28–30, 42; *id.* at 5, ¶ 20). The Rideaus signed the security instrument on October 14, 2016, closing on their loan. (*Id.* at 6–10). Because the Rideaus received the § 50(g) notice on October 2, they had the notice for the required 12 days before closing.

The Rideaus did not present an argument or point to summary judgment evidence disputing compliance with § 50(a)(6)(M)(i). (*See* Docket Entry No. 21). Because there are no genuine factual disputes material to determining that the lenders complied with § 50(a)(6)(M)(i), the court grants summary judgment to the defendants on the Rideaus' claims based on § 50(a)(6)(M)(i).

**B.     Section 50(a)(6)(M)(ii)**

Section 50(a)(6)(M)(ii) requires a home equity loan closing to occur at least one business day after the borrower receives a copy of the loan application "and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing." TEX. CONST. art. XVI, § 50(a)(6)(M)(ii). The defendants attach to their motion an affidavit the Rideaus signed on October 14, 2016, stating that they received the loan application and the final charges, in compliance with § 50(a)(6)(M)(ii). (Docket Entry No. 20-1 at 36). The Rideaus did not present an argument or point to summary judgment evidence disputing compliance with § 50(a)(6)(M)(ii). (*See* Docket Entry No. 21). Because there is no genuine factual dispute material to determining that the lenders complied with § 50(a)(6)(M)(ii), the court grants summary judgment to the defendants on the Rideaus' breach-of-contract and other claims based on § 50(a)(6)(M)(ii).

**C.     Section 50(a)(6)(N)**

Section 50(a)(6)(N) requires the loan to close "only at the office of the lender, an attorney at law, or a title company." TEX. CONST. art. XVI, § 50(a)(6)(N). The defendants offer a declaration from IMPAC's assistant general counsel stating that the closing took place "at the offices of Orange Coast Title" in Sugarland, Texas. (Docket Entry No. 20-1 at 4, ¶ 17). The defendants also offer the Texas Home Equity Affidavit and Agreement the Rideaus signed on October 14, 2016, stating that they were "signing the loan documents, at the office of the Lender, an attorney at law, or a title company." (*Id.* at 33).

The Rideaus did not present an argument or point to summary judgment evidence disputing compliance with § 50(a)(6)(N). (*See* Docket Entry No. 21). Because there is no genuine factual dispute material to determining that the lenders complied with § 50(a)(6)(N), the court grants summary judgment to the defendants on the Rideaus' breach-of-contract and other claims based on § 50(a)(6)(N).

### D. Section 50(a)(6)(Q)(v)

Section 50(a)(6)(Q)(v) requires that, on the date the credit is extended, the borrower "receive a copy of the final loan application and all executed documents signed by the [borrower] at closing related to the extension of credit." TEX. CONST. art. XVI, § 50(a)(6)(Q)(v). The Rideas affirmed in their Texas Home Equity Affidavit that, "[t]o the best of [their] knowledge and belief, all owners of the Property, after receiving a copy of the final loan application and all documents signed by them at closing, will sign a receipt acknowledging the delivery of such copies." (Docket Entry No. 20-1 at 33–34). The Rideaus also signed a Texas Home Equity Receipt of Copies acknowledgment on October 14, 2016, stating that they had received all of the documents required under § 50(a)(6). (*Id.* at 37).

The Rideaus did not present an argument or point to summary judgment evidence disputing compliance with § 50(a)(6)(M)(i). (*See* Docket Entry No. 21). Because there is no genuine factual disputes material to determining that the lenders complied with § 50(a)(6)(Q)(v), the court grants summary judgment to the defendants on the Rideaus' breach-of-contract and other claims based on § 50(a)(6)(M)(i).

### E. Section 50(a)(6)(Q)(ix)

Section 50(a)(6)(Q)(ix) requires both the borrower "and the lender . . . [to] sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made." TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix). The defendants argue that this

7

requirement was satisfied because the lender signed a loan application on August 24, 2016, listing the "present market value" of the home, and Joseph Rideau signed an Acknowledgment Regarding Fair Market Value of Homestead Property on October 14, 2016, listing the property's fair market value as $425,000. (Docket Entry No. 20 at 11–14; Docket Entry No. 20-1 at 38–44, 52). The defendants also argue that the Texas Home Equity Loan Affidavit shows that § 50(a)(6)(Q)(ix) was satisfied because the affidavit states that "[t]he Lender and each owner of the Property have signed a written acknowledgment as to the fair market value of the Property on the date the Extension of Credit is made." (Docket Entry No. 20-1 at 33; *see* Docket Entry No. 20 at 13–14).

Only the Rideaus signed the October 2016 Affidavit and the October 2016 Acknowledgment. (Docket Entry No. 20-1 at 34, 49–51). The law is unsettled on whether a document signed by the borrower alone satisfies § 50(a)(6)(Q)(ix). The defendants argue that *Alexander v. American Home Mortgage Servicing, Inc.*, No. 4-16-778-cv, 2017 WL 4014626 (Tex. App.—San Antonio, Sept. 14, 2017), supports their interpretation of this requirement. (Docket Entry No. 20 at 16 (citing *Alexander*, 2017 WL 4014626, at *3 n.2)). In *Alexander*, the state court explained that it need not address an alleged § 50(a)(6)(B) violation, which requires that the total principal balance of a home equity loan cannot "exceed 80 percent of the fair market value of the homestead the day the extension of credit is made," because the plaintiffs had not properly pleaded that claim. *Alexander*, 2017 WL 4014626, at *3; *see* TEX. CONST. art. XVI, § 50(a)(6)(B). But in a footnote, the court noted that while § 50(a)(6)(Q)(ix) requires the borrower and lender to sign an acknowledgment of the fair market value, the record showed that the plaintiffs signed an affidavit confirming that they had received an acknowledgment that the loan did not exceed 80% of the fair market value. *Alexander*, 2017 WL 4014626, at *3 n.2. The court pointed out that the plaintiffs signed a loan application stating that the "present market value" of the property was $390,000 and the loan value was $280,000. *Id.*

8

The defendants read the footnote in *Alexander* to mean that a party may show compliance with § 50(a)(6)(Q)(ix) with similar evidence. However, the footnote in *Alexander* does not address what is sufficient evidence of § (a)(6)(Q)(ix) compliance. Instead, it focuses on whether the lenders showed that the total principal balance did not exceed 80% of the fair market value when the lenders extended the credit. *Id.* The defendants have not pointed to case law showing that the loan application alone can show compliance with § 50(a)(6)(Q)(ix).

The defendants make a persuasive argument, however, that the Texas Home Equity Loan Affidavit, which states that "the Lender and each owner of the Property have signed a written acknowledgment as to the fair market value of the Property on the date the Extension of Credit is made," shows compliance with § 50(a)(6)(Q)(ix). (Docket Entry No. 20 at 16–18). In *Rodriguez v. Deutsche Bank National Trust Co.*, 742 F. App'x 32 (5th Cir. 2018), the Fifth Circuit addressed whether an undated, signed "Lender's Acknowledgment of Fair Market Value," a signed "Owner's Acknowledgment of Fair Market Value," and an affidavit signed by the borrower stating that both the lender and borrower had signed the acknowledgment of fair market value satisfied § 50(a)(6)(Q)(ix). *Id.* at 34. The appellate court affirmed the grant of summary judgment for the defendant because the plaintiff had not presented or identified evidence disputing that the lender had signed the acknowledgment. *Id.* Like the *Rodriguez* defendants, the defendants here presented two different signed documents along with an affidavit signed by the Rideaus stating that § 50(a)(6)(Q)(ix) was satisfied. While here the lender signed a "Uniform Residential Loan Application," which gave the property's "present market value," rather than an Acknowledgment of Market Value, (Docket Entry No. 20-1 at 43), this appears to be a distinction without a difference. The Loan Application, along with the affidavits, show that the Rideaus and IMPAC were informed of the fair market value and signed an acknowledgment to that effect.

The Rideaus respond that "the facts of this case are almost identical to those" of *Zepeda v. Federal Home Loan Mortgage Association*, No. 4:16-cv-3121, 2018 WL 781666 (S.D. Tex. Feb. 8, 2018). In that case, the state court held that a lien did not comply with § 50(a)(6)(Q)(ix) because the lender had not signed an acknowledgment of fair market value. *Id.* at *3. The record in *Zepeda* showed that only the plaintiff had signed an "Acknowledgment of Fair Market Value." *Id.* at *2. The state court concluded that the plaintiff's acknowledgment alone was insufficient to show compliance with § 50(a)(6)(Q)(ix).

However, in *Zepeda*, the plaintiff signed a "Receipt of Document Copies [that] acknowledge[d] only that Plaintiff received a copy of the Acknowledgment of Fair Market Value but [did] not speak to its completeness." *Id.* Here, the Rideaus signed an affidavit—not just a receipt of acknowledgment—stating that both the lender and the borrower had signed an acknowledgment of the fair market value. (*See* Docket Entry No. 20-1 at 31–34). The defendants argue that this affidavit coupled with the lender's signature on the "Uniform Residential Loan Application" satisfies § 50(a)(6)(Q)(ix). Because *Zepeda* did not consider a signed affidavit, that case does not foreclose concluding that an affidavit stating that the borrower and lender have complied with § 50(a)(6)(Q)(ix) can satisfy that requirement.

The Rideaus also argue that the acknowledgment of fair market value must be signed by both parties on the date that the extension of credit is made, which is not satisfied by the October 2016 loan application because it was signed by the Rideaus and IMPAC on different days. (Docket Entry No. 22 at 7–9; *see* Docket Entry No. 20-1 at 42–43). Other cases have not taken that view, and § 50(a)(6)(Q)(ix)'s text does not support that reading. *See, e.g.*, *Leander v. U.S. Bank, Nat'l Assoc.*, No. 17-2586, 2018 WL 1787937, at *4 (S.D. Tex. May 27, 2018) ("[T]he summary judgment evidence in the record shows that the Leanders signed an acknowledgment of fair market value on December 21, 2004, and the Lender signed that same form on December 27, 2004, the date the funds

were disbursed. The Leanders point to no authority, statutory or otherwise, and no summary judgment evidence that would render this acknowledgment ineffective."); *Rodriguez*, 742 F. App'x. at 34 (an undated acknowledgment along with an affidavit was sufficient to comply with section 50(a)(6)(Q)(ix) of the Texas Constitution).

The Texas Constitution requires that "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made." TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix). Nothing in the language suggests that all parties must sign the acknowledgment on the same day. Section 50(a)(6)(Q) sets out requirements for actions to be performed at specific times in separate clauses. If the parties had to sign the acknowledgment at the same time, this requirement would be clearly stated in § 50(a)(6)(Q). (*See* Docket Entry No. 22 at 5-6); *see, e.g.*, TEX. CONST. art. XVI, § 50(a)(6)(Q)(v) ("at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit"). The phrase "on the date the extension of credit is made" in § 50(a)(6)(Q)(ix) immediately follows "the fair market value of the property," indicating that the acknowledgment must state what the fair market value is on the date of the extension of credit, not that all the parties must the acknowledgment on this date. TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix).

The defendants have pointed to competent summary judgment evidence showing that the Rideaus and IMPAC acknowledged in writing the fair market value of the property. Because the Rideaus have not pointed to or offered summary judgment showing a genuine factual dispute material to determining that § 50(a)(6)(Q)(ix) was not violated, the court grants summary judgment to the defendants on the Rideaus' breach-of-contract and other claims based on § 50(a)(6)(Q)(ix).

**F.     Breach of Contract**

Violations of § 50(a)(6) of the Texas Constitution do not themselves provide a cause of action, but instead prevent a lender from foreclosing on a homestead. *Garofolo*, 497 S.W.3d at 477–78. A breach-of-contract claim based on § 50(a)(6) violations can be brought if the requirements are incorporated into the loan terms. *Id.* at 479.

Paragraph 19 of the Security Instrument incorporates the Texas Constitution's homestead requirements by stating that "[i]t is the express intention of the Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by § 50(a)(6), Article XVI of the Texas Constitution." (Docket Entry No. 20-1 at 22). The Rideaus' breach-of-contract claim rests on the allegation that the defendants violated the provisions Article XVI, § 50(a)(6) of the Texas Constitution discussed above. (Docket Entry No. 8 at ¶¶ 14–16). Because the summary judgment evidence does not show genuine factual disputes material to determining that there were no violations of the Texas Constitution, there are no genuine factual disputes material to determining that there was no breach of contract. The court grants summary judgment to the defendants on the breach-of-contract claims.

### G. Quiet Title

A suit to quiet title is an equitable remedy in Texas. *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, no pet. h.). A plaintiff bringing a quiet-title action "must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Id.* at 61–62 (citing *U.S. Nat'l Bank Assoc. v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] 2011, no pet. h.). Because there are no genuine factual disputes material to determining that there is no violation of the Texas Constitution, the Rideaus have not shown a genuine factual dispute material to determining that the lien on the property is neither invalid or nor unenforceable as

alleged. Their quiet-title claim fails on the third element. The court grants summary judgment to the defendants on this claim.

### H. Declaratory Judgment

Because there are no genuine factual disputes material to determining the defendants did not violate the Texas Constitution as alleged, the Rideaus' request for a declaratory judgment fails. (Docket Entry No. 8 at ¶ 23). While the Rideaus style their request as under Texas law, declaratory judgment in federal court is considered under 28 U.S.C. § 2201. *Vestal v. Fed. Nat'l Mortg. Assoc.*, No. H-16-3628, 2017 WL 4217165, at *3 (S.D. Tex. Sept. 20, 2017). Because the record does not support finding violations of the Texas Constitution, no justiciable case or controversy exists as required under 28 U.S.C. § 2201. The Rideaus are not entitled to declaratory judgment, summary judgment is granted to the defendants on this claim.

## IV. Conclusion

Because the court grants the defendants' summary judgment motion on all claims asserted, (Docket Entry No. 19), final judgment is separately entered.

SIGNED on April 24, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

13